UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 05-22588-CIV-HIGHSMITH

GLOBALTECH, LLC.

    Plaintiff,

v.

AIR TIGER EXPRESS, INC.

    Defendant

_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment and Defendant's Motion to Supplement Summary Judgment Record. This Court has thoroughly reviewed Defendant's Motions, Plaintiff's Responses to those Motions, Defendant's Replies in support of its motions, the record, and relevant case law. For the foregoing reasons, this Court ORDERS and ADJUDGES that both of Defendant's motions are **DENIED**.

## I. BACKGROUND

The instant matter stems from a commercial transaction between Plaintiff, GlobalTech, LLC ("GlobalTech" or "Plaintiff"), and non-party Source Top Limited ("Source Top"), whereby Plaintiff agreed to sell 1,440 Intel microprocessors to Source Top for $141,840.00. Plaintiff received payment in full from Source Top on the same day the agreement was executed, July 19, 2005. Plaintiff subsequently used this money to pay its supplier of these microprocessors, non-party AllPlus Computer Systems, Corp. ("AllPlus"),[1] in the amount of $139,320.00, keeping the

---

[1]AllPlus is an Intel distributor, based in Miami, that receives Intel processors directly from an Intel factory.

1

difference as its profit.

The agreement between Plaintiff and Source Top called for the goods to be shipped "F.O.B., Fl; Shipper, FedEx." The record indicates that the parties intended this clause to require Plaintiff to arrange, pay for and bear the risk of loss of the microprocessors from the time they were picked up at AllPlus's warehouse in Miami until they reached Federal Express ("FedEx") in Miami, Florida. Once the goods arrived at FedEx in Miami, Source Top was responsible for paying for and bearing the risk of loss of shipment by FedEx from the FedEx center in Miami to Hong Kong, China, where Source Top is located. Source Top obtained insurance to cover the shipment from FedEx in Miami to its location in Hong Kong.

On July 19, 2005, Plaintiff contacted Defendant, Air Tiger Express, Inc. ("Air Tiger" or "Defendant") to arrange for transportation of the microprocessors from AllPlus's warehouse in Miami, Florida to the Defendant's warehouse in Doral, Florida. Once the microprocessors reached Defendant's warehouse, these microprocessors were to be photographed and repackaged by Defendant in preparation for their delivery to FedEx. On July 19, 2005, at approximately 5:30 p.m., Defendant's employee, Kenny Lopez ("Lopez"), picked up the subject cargo from AllPlus's warehouse. The cargo consisted of five identical cartons containing 288 Intel Processors per carton, each of which was factory-sealed. Each box was individually labeled with the lot information. Prior to releasing the cartons to Defendant's employee Lopez, Lopez provided AllPlus with the customer order number provided to Plaintiff, signed the Commercial Invoice indicating that the cartons were received in good condition, and allowed AllPlus to copy his driver's license. Lopez then brought the cartons to Defendant's warehouse.

Upon reaching Defendant's warehouse, the five individual cartons were repackaged by

Defendant's employee, Edwin Valentin ("Valentin"), into three larger boxes. Valentin placed two cartons each into two different boxes and the remaining carton into another box. Valentin then weighed each of the three boxes that contained the microprocessors and recorded the weights on Defendant's cargo receipt. Contrary to Defendant's normal business procedures, photographs of the factory-sealed cartons were not taken prior to being repackaged.[2] The following day, July 20, 2005, Lopez prepared the Federal Express International Air Waybills, listing the weights of the three boxes as 9 kilograms (19.84 pounds), 16 kilograms (35.27 pounds) and 16 kilograms (35.27 pounds), respectively.

On the same day, without the knowledge or consent of Plaintiff, Lopez arranged for a third-party carrier, Cannon Express, to pick up the repackaged boxes from Defendant's warehouse and deliver them to the FedEx center in Miami. Upon delivery to FedEx, the boxes were re-weighed by FedEx employees. The weights originally listed by Lopez at the Defendant's warehouse were crossed out and replaced by the following new weights: the 9 kilograms (19.84 pounds) box was changed to 35 pounds, and the other two boxes weighing 16 kilograms each (35.27 pounds) were changed to 24 pounds and 36 pounds respectively. The boxes traveled from the FedEx center in Miami to Source Top in Hong Kong, and when a SourceTop employee opened the three boxes in Hong Kong, the factory-sealed cartons inside those boxes showed signs that they had been opened and re-taped. When opened, the factory-sealed cartons contained only worthless CD-Roms, not Intel microprocessors.

After Source Top's insurer denied coverage, Source Top sought recovery of the value of the goods from Plaintiff through the issuance of a Debit-Note in the amount of $141,840.00.

---

[2] Photographs are generally taken at this juncture for insurance purposes.

3

Albert Liu, Plaintiff's owner, made several payments to Source Top, including several withdrawals from his personal account.[3] Following these payments, Plaintiff initiated this action against Defendant seeking compensation in the amount of $139,320.00, the amount it paid AllPlus for the microprocessors. After extensive discovery, Defendant filed the instant Motion for Summary Judgment and its Motion to Supplement the Summary Judgment Record.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See* Herzog v. Castle Rock Entm't., 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *See* Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

---

[3]Before discovery of the loss of the microprocessors which forms the basis for this dispute, Source Top had placed a separate order with the Plaintiff for goods in the amount of $132,435.00. These goods were delivered to Source Top on July 26, 2005. Source Top had prepaid $80,000.00 to the Plaintiff for this shipment. Source Top withheld the balance due on this shipment, $52,435.00, to be applied toward the balance due for the lost cargo on the Debit-Note. Plaintiff was, therefore, forced to wire $52,435.00 from its own account to its vendor to pay for the balance due on the goods shipped to Source Top. In addition, Albert Liu transferred a total of $8,500.00 to Source Top from his personal bank account.

This court views all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. *See* United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990). "If the record presents factual issues, the court must not decide them. Instead, it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *See* Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### (A) Defendant's Motion for Summary Judgment

Defendant's Motion for Summary Judgment contends that summary judgment is appropriate for three reasons: (1) Plaintiff voluntarily repaid Source Top and is precluded from recovering this amount under the voluntary payment rule; (2) Plaintiff lacks standing to bring this suit; and (3) Plaintiff failed to join an indispensable party (Source Top). These claims all rely on the same presupposition: Source Top's up-front payment in full to Plaintiff immediately transferred the risk of loss from Plaintiff to Source Top, irrespective of contractual language, including the F.O.B. term. According to Defendant, this would make any subsequent refund by the Plaintiff gratuitous in nature and it would also mean that Source Top, not Plaintiff, is the proper party to bring suit here. Conversely, Global Tech's response asserts that the contractual language gave Plaintiff the risk of loss until the microprocessors were delivered to the FedEx center in Miami. Thus, before this Court can determine whether there are any disputes of material fact, it must clarify who bore the risk of loss as a matter of law.

(i) *Risk of Loss*

In essence, Defendant believes that up-front payment in full supercedes any F.O.B. (free on board) terms placed in the contract. Defendant, however, provides no relevant case law to this effect. To the contrary, it is well-established that a shipment contract places the risk of loss on the seller until he gives the product to the carrier. *See* Falls Industries, Inc. v. Consolidated Chemical Industries, 258 F.2d 277, 281-282 (5th Cir. 1958) (explaining that unless the contract provides contrary intentions, it is difficult for a buyer to avoid the usual consequences that attach to passage of title where the bill of lading provides for a sale F.O.B. point of shipment).

In the instant matter, Plaintiff and Source Top agreed to send the microprocessors pursuant to a shipment contract "F.O.B., Fl; Shipper, FedEx." According to the Uniform Commercial Code Section 2-319 (2003):

> 1) Unless otherwise agreed, the term F.O.B. (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which
>
> (a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article and bear the expense and risk of putting them into the possession of the carrier...

Thus, it is clear that pursuant to both the UCC and the intentions of the parties who drafted the contract containing the F.O.B. term, risk of loss was to pass to Source Top only once Plaintiff brought the goods to FedEx.[4] Source Top only obtained insurance for transit by FedEx from Miami to Hong Kong, covering the portion of transit it believed it was responsible for.[5]

---

[4] In fact, Defendant was hired by Plaintiff to bring the microprocessors to FedEx.

[5] Initially, Source Top's insurer declined coverage of the lost microprocessors. Subsequently, as noted in Defendant's Motion to Supplement the Summary Judgment Record, Defendant offers evidence that Source Top's insurer reconsidered and has reimbursed it.

Therefore, because no evidence indicates contrary intent, the risk of loss passed to Source Top only when the goods were delivered to FedEx, not upon payment in full.

Because the Court's conclusion concerning risk transfer differs from that which Defendant maintains throughout its Motions, its bases for summary judgment are only relevant if the microprocessors, in fact, reached FedEx in Miami. Specifically, with respect to Defendant's first claim -- that the voluntary payment rule precludes reimbursement by Air Tiger of gratuitous payments by Defendant to Source Top -- if Plaintiff bore the risk of loss when the goods were stolen, Plaintiff would have been required to repay the price paid by Source Top, irrespective of Plaintiff's knowledge of its obligation. *See* UCC §2-711(a). Moreover, if Plaintiff bore the risk of loss at the time the goods were stolen, Defendant's second and third claims are equally without merit as Plaintiff would have standing to sue. Thus, the location of the microprocessors when they were lost becomes the determinative factual question upon which this Court can grant or deny summary judgment.

(ii) *Where did the theft take place?*

If the microprocessors were lost or stolen prior their arrival at FedEx in Miami, Plaintiff is liable for the cost of the products and has standing to bring its action. If the loss took place after the risk of loss switched to Source Top (the goods were lost or stolen after they left FedEx), Plaintiff is without standing to sue and summary judgment may be granted.

A proper review of the record reveals several facts that preclude summary judgment because they tend to show that the loss probably occurred prior the goods being delivered to FedEx in Miami. First, the record reveals that the re-packaged boxes changed weight between the time the cartons were re-packaged at Defendant's warehouse and when they were weighed by

7

FedEx at its center. Second, the Defendant made use of another carrier to take the goods from its warehouse to FedEx, unbeknownst to the Plaintiff, which accounts for time where the theft may have taken place. Third, Defendant failed to take pictures of the goods for insurance purposes before re-packaging the boxes, even though it is Defendant's regular business practice to do so. Fourth, when the packages arrived in Hong Kong via FedEx, the factory-sealed cartons showed evidence of being opened and resealed. When opened in Hong Kong, they were full of useless CD-ROM's. Because these facts are susceptible to showing that the risk of loss never passed to Source Top, and remained with Plaintiff, summary judgment must be denied. Of course, the jury will be the ultimate arbiter of the facts in this case. It is clear from the record, however, that where the theft or loss of the microprocessors occurred is a matter that should be determined by a jury, and not this Court.

### (iii) *Sanctions*

Defendant's Motion for Summary Judgment also asserts that Plaintiff should be subject to discovery and procedural sanctions. This claim is without merit. The items at issue (receipts, debit-notes, and statements concerning payments by Mr. Liu and GlobalTech to Source Top) are unrelated to the crux of the motion for summary judgment -- who bore the risk of loss when the microprocessors were stolen, and where that loss occurred. Because any discovery violations by Plaintiff are not sanctionable, Defendant's request for sanctions is DENIED.

## (B) Defendant's Motion to Supplement the Summary Judgment Record

Defendant wishes to supplement the summary judgment record to introduce evidence that Source Top, through its subrogated insurer, now believes it is entitled to damages against Defendant. In addition, Defendant asserts that Source Top's insurer paid Source Top under a

policy of insurance which covered Source Top as the owner of the cargo in question. This information does not, however, remove all issues of material fact. Source Top's insurer's decision to pay Source Top for its loss is not determinative of the location of the loss or theft of the microprocessors. Because the supplemental materials are not capable of eliminating the factual issues delineated *infra*, Defendants Motion to Supplement the Summary Judgment Record is DENIED. *See* Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 (11th Cir. 1995) (upholding denial of motion to supplement the record because the evidence offered by the non-moving party did not create a genuine issue of material fact). Moreover, even if the Court allowed the supplemental material, Defendant's Motion for Summary Judgment would still be denied because disputes of material fact still remain.

## IV. CONCLUSION

It is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment and Defendant's Motion to Supplement the Summary Judgment Record, are both **DENIED**. Within 10 days of this Order, the parties shall submit a Joint Status Report to this Court, apprising this Court of how they wish to proceed.

**DONE AND ORDERED** in Chambers at Miami, Florida, this _11_ day of April, 2007.

SHELBY HIGHSMITH
UNITED STATES DISTRICT JUDGE

copies to Counsel of Record